UNITED STATES BANKRUPTCY COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | NUMBER |
| **BERNARD E. PERRONE, SR.**<br>**JULIE F. PERRONE** | **02-12314** |
| | |
| **MARTIN A. SCHOTT, TRUSTEE** | ADV. NUMBER |
| PLAINTIFF | **03-1006** |
| V. | |
| **BERNARD E. PERRONE, SR.**<br>**JULIE F. PERRONE** | |
| DEFENDANT | |

## MEMORANDUM OPINION

Trustee Martin Schott sued to deny the discharge of debtors Bernard and Julie Perrone under 11 U.S.C. §§727(a)(2) and (a)(4). The trustee's demand is based on allegations that the debtors transferred property belonging to Comtel, Inc. ("Comtel") and a Harley-Davidson motorcycle to members of their family with the intent to hinder, delay or defraud creditors. He also claims that the debtors knowingly undervalued their home on their bankruptcy schedules. For reasons set out in this opinion, it is not necessary to address the trustee's claim that the debtors deliberately underestimated the value of their immovable property.

## FACTS

### (1) Transfer of Assets from Comtel to ProTel

The Perrones owned one-half of the stock of Comtel, a closely-held corporation that sold, installed and repaired computers and telephone systems. Apparently optimistic about the business's prospects, Mr. and Mrs. Perrone decided to buy out the other half owner, Carl Feinberg in 1998. The Perrones agreed to pay Feinberg $550,000 for his half of the company. Using Comtel funds, they paid Feinberg $160,000 in cash and executed two promissory notes in his favor. The notes were paid from Comtel's revenues, and when Comtel failed to generate enough revenue to pay the notes, the Perrones defaulted on the contract. Feinberg sued Comtel and Bernard Perrone in the 19th Judicial District Court for East Baton Rouge Parish, which, on a motion for summary judgment, granted Feinberg substantial judgment against Comtel and Bernard Perrone on May 29, 2002.

Bernard Perrone, who admitted knowledge of the impending adverse judgment, was taking steps to protect the debtors' assets from their creditors. On April 21, 2002, only slightly more than a month before the state court rendered its judgment for Feinberg, on April 21, 2002, Mr. Perrone's son Justin formed ProTel, LLC. ("ProTel"). Then, on June 4, 2002, within a week after the judgment in Feinberg's favor, Comtel sold its physical assets to ProTel. Mr. Perrone testified that Pro Tel in fact began using Comtel's assets in April 2002, and used funds generated from these assets to complete the purchase of Comtel.

The debtors filed a chapter 7 petition on August 15, 2002.

### (2) Transfer of Motorcycle

Bernard Perrone testified that he sold his 1992 Harley Davidson motorcycle to his father in June 2002, about 13 days after the state court judgment.[1] The debtor bought the motorcycle in 1996 or 1997 for about $14,995, and sold it to his father for $6,269 because he needed the money to pay bills. The trustee does not dispute that Joseph Perrone actually paid the purchase price.

The debtor testified that he sold the vehicle to his father after unsuccessfully trying to sell it for about $11,000 through newspaper ads, and flyers at a motorcycle shop and local business for about two to four weeks. However, he did not recall the date he first offered the motorcycle for sale, or how long the newspaper ads ran. The debtor did not introduce evidence of the method by which the parties arrived at the purchase price, but the evidence did include the debtor's written representation submitted in a credit application to a third party, Graybar Electric, a potential ProTel vendor, that the motorcycle was worth $12,000 only six weeks before the sale to his father.[2]

The motorcycle remains in the debtor's garage. His father never took delivery, and in fact never rode the motorcycle, apparently because the elder Perrone is 82 years old, and according to his son probably has never ridden a motorcycle. Bernard Perrone himself apparently is the only person who occasionally rides the cycle. Joseph Perrone did not testify at trial.

---

[1] The Bill of Sale for the motorcycle dated June 11, 2002 was admitted into evidence as exhibit T-3.

[2] The May 1, 2002 letter to Grant Ligon, a financial manager at Graybar/New Orleans, was admitted into evidence as exhibit T-5.

The debtor points out that his response to question 10 on the statement of financial affairs discloses the sale of the motorcycle to Joseph Perrone. That question calls for a list of the debtor's prepetition transfers made either absolutely, or as security. However, question 14 on the statement of financial affairs separately calls for a list of property held by the debtor for another person. In response to question 14, the debtors stated under oath that they were not holding any such property. In combination, the responses to the two questions tend to lead a person reviewing the schedules to conclude that the debtor sold the 1992 Harley Davidson in a legitimate, good faith (if not arm's length) transaction, and that it had left his possession and reduced the pool of assets available to satisfy his creditors' claims.

## ANALYSIS

### (1)  11 U.S.C. §727(a)(2)(A)

The trustee's complaint alleges that the debtor's discharge should be denied under 11 U.S.C. §§727(a)(2)(A) and (a)(4). However, the Court need not consider all the grounds alleged by the trustee because a showing of conduct satisfying one of the exceptions to discharge found in section 727 is sufficient to deny a debtor's discharge. *Matter of Krehl*, 86 F.3d 737, 744 (7th Cir. 1996), citing *Farouki v. Emirates Bank Int'.l, Ltd.*, 14 F.3d 244, 250 (4th Cir. 1983). Accordingly, because the trustee has proven by a preponderance of evidence the allegations under §727(a)(2)(A) regarding the transfer of the motorcycle, the Court will not address the other allegations of the complaint.

Bankruptcy Code section 727(a)(2)(A) bars a debtor's discharge if the debtor "with intent to hinder, delay, or defraud a creditor or an officer of the estate . . . has

transferred . . . property of the debtor, within one year before the date of the filing of the petition." Section 727 has four elements:"'(1) a transfer of property; (2) belonging to the debtor; (3) within one year of the filing of the petition; (4) with intent to hinder, delay, or defraud a creditor . . . .'" *In re Dennis*, 330 F.3d 696, 701 (5th Cir. 2003), quoting *In re Chastant*, 873 F.2d 89, 90 (5th Cir. 1989). Here, the first three elements essentially are not disputed. Bernard Perrone transferred his motorcycle to his father, Joseph Perrone, slightly more than one month before the younger Perrone filed his bankruptcy petition. The only issue is whether the debtor had the intent required by the statute.

Evidence of actual intent to defraud is essential to deny a debtor's discharge under Bankruptcy Code §727(a)(2)(A). *Dennis*, 330 F.3d at 701. The Fifth Circuit has identified several factors tending to show actual intent to defraud:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit, or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

Id. at 702. Application of these factors to the facts of this case supports a finding that the debtor actually intended to hinder, delay or defraud his creditors when he sold the motorcycle to his father.

First, the elder Mr. Perrone bought the motorcycle for $6,269, when the debtor represented in newspaper ads and to Graybar Electric within a brief time before the transfer that the vehicle was worth between $11,000 or $12,000. The debtor's father paid substantially less, and the debtor offered no evidence to explain how he and his father

5

arrived at the substantially lower price. Second, the debtor transferred the motorcycle to a family member. Third, the debtor retained possession of the motorcycle and used it exclusively. Fourth, the debtor admitted that he sold the vehicle because he needed the money, but sold it for less than what he previously believed was the market price. Finally, the sale took place just over two months before the bankruptcy filing, but after the debtor was cast in judgment. The majority of the factors thus support the Court's finding that the debtor made the transfer with actual intent to hinder, delay or defraud within the meaning of 11 U.S.C. §727(a)(2)(A).

### (2) 11 U.S.C. §727(a)(4)

The trustee's complaint also alleges that the debtors undervalued their home located at 13522 Betti Helen Place in Baton Rouge on their schedules. The trustee alleges that the debtors valued the home at $175,000 when they knew, and had previously listed, the value of the home to be $225,000.

Because the Court already has held that Bernard Perrone's discharge must be denied under §727(a)(2)(A), it is unnecessary to determine whether the undervaluation was a false oath sufficient to bar the Bernard Perrone's discharge under §727(a)(4).

### (3) Discharge of Julie Perrone

The trustee also seeks to bar the discharge of Julie Perrone under 11 U.S.C. §§727(a)(2)(A) and (a)(4). There was little evidence offered regarding Julie Perrone's participation in the transactions at issue. The trustee admitted that she was not involved in the Comtel/ProTel transactions. Mrs. Perrone admitted that she knew her husband was trying to sell the motorcycle, but stated that she never saw the act of sale. She admitted signing the schedules with the $175,000 valuation for the home and admitted signing the

loan application in which she and her husband valued their house at $225,000. However, she also stated that she wasn't sure what the house was worth at the time the petition was filed. She further stated that she was not involved in her husband's business.

The Court concludes from Julie Perrone's testimony that she apparently relied on her husband's business skills in their financial transactions and in executing their schedules.

The trustee had the burden of proving that Julie Perrone herself possessed the intent required to deny her discharge under sections 727(a)(2)(A) and (a)(4). The evidence did not support a finding that Mrs. Perrone intended to hinder, delay or defraud creditors or that she knowingly made a false oath and the Bankruptcy Code does not allow attribution of intent from one spouse to the other. *Matter of Reed*, 700 F.2d 986, 993 (5th Cir. 1983)(citation omitted). The Court, therefore, will not deny Mrs. Perrone's discharge.

## CONCLUSION

The discharge of Bernard Perrone is denied under 11 U.S.C. §727(a)(2)(A). The Complaint against Julie Perrone is dismissed.

Baton Rouge, Louisiana, December 8, 2003.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

7